**LOCAL 513, INTERNATIONAL UNION OF OPERATING ENGINEERS, Appellee,**

v.

**J.S. ALBERICI CONSTRUCTION COMPANY, Appellant.**

No. 90–1925.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 8, 1991.

Decided June 27, 1991.

Donald Meyer, Clayton, Mo., for appellant.

J.F. Souders, St. Louis, Mo., for appellee.

Before ARNOLD, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

J.S. Alberici Construction Company appeals from the district court's judgment in favor of Local 513, International Union of Operating Engineers (Local 513), compelling arbitration between the parties. 736 F.Supp. 210. We reverse.

Alberici entered into a contract with the Army Corps of Engineers to renovate Lock and Dam No. 22 on the Mississippi River. Alberici subcontracted with Shield Painting Company to perform painting and sandblasting. Shield was a party to a collective bargaining agreement with the Painters International Union and its District Council No. 2 (the Painters). Local 513 was a party to a collective bargaining agreement with Alberici.

When Local 513 discovered that members of the Painters were turning on and off air compressors that powered the painting and sandblasting equipment that Shield was using to perform the subcontracted work, it complained to Alberici, contending that turning the compressors on and off was

exclusively Local 513's work under its collective bargaining agreement with Alberici. When these complaints proved unavailing, Local 513 sued Alberici to compel arbitration of what it characterized as a dispute over the interpretation of the parties' collective bargaining agreement, contending that Alberici's failure to require Shield to sign the agreement constituted a violation of Article XIX, Section 4 of the agreement. The district court agreed with Local 513 that the suit centered on interpreting the subcontracting clause of the collective bargaining agreement and therefore compelled arbitration between the parties.

Article XIX, Section 4 of the collective bargaining agreement between Alberici and Local 513 provides in part:

> Nothing contained in this Agreement shall be construed to prevent the right of any Employer to subcontract all or any part of work awarded to it. If, however, an Employer elects to subcontract out all or any part of such work, then, in that event, such Employer shall make adequate provision in the contract, Agreement or understanding with the subcontractors to be or become a signatory to this collective bargaining agreement and to recognize, abide by and be bound by all of the terms and provisions of this collective bargaining agreement.

Article XVII, Section 2, of the agreement excludes jurisdictional disputes from arbitration:

> All grievances, disputes or claims (hereinafter called "grievances") except jurisdictional disputes which may arise with respect to wages, hours or conditions of employment or the enforcement or interpretation of any of the terms of this Agreement are to be promptly processed and settled in accordance with the provisions of this Article.

Article XVIII, Sections 2C and 4 and Article XIX, Section 1 make the AFL–CIO National Joint Board for the Settlement of Jurisdictional Disputes the exclusive forum for the resolution of jurisdictional disputes.

The joint stipulation of facts submitted to the district court stated, among other things, that in addition to the subcontract with Shield, Alberici had entered into subcontracts with six other subcontractors to perform work on the Lock and Dam No. 22 contract, none of whom were signatories to the collective bargaining agreement with the Operating Engineers. No demand had been made upon Alberici by the Operating Engineers that Alberici cause these subcontractors to sign a collective bargaining agreement with the Operating Engineers.

Alberici contends that Local 513's complaint is jurisdictional in nature because the crux of the suit is a dispute over the Painters' authority to run the compressors, a dispute that Alberici contends must be decided by the AFL–CIO National Joint Board as provided for by the agreement. We agree.

The dispute between the Painters and the Operating Engineers is ongoing, and has on occasion been resolved in favor of the Painters. *See All American Decorating Corp.*, 296 N.L.R.B. 120 (1989); *Oliver B. Cannon, Inc.*, 258 N.L.R.B. 143 (1981); *Oliver B. Cannon & Son, Inc.*, 256 N.L.R.B. 184 (1981); *United Painting Co.*, 255 N.L.R.B. 167 (1981). The National Labor Relations Board has determined that disputes such as this are essentially jurisdictional and not merely controversies over subcontracting clauses. *Slattery Associates*, 298 N.L.R.B. 111 (1990); *Mechanical Inc.*, 298 N.L.R.B. 112 (1990). *See also International Union of Operating Eng'rs, Local 150 v. Kenny Constr. Co.*, 582 F.Supp. 1467 (N.D.Ill.1984).

On the other hand, at least two courts of appeals have found similar disputes to be sub-contracting grievances at heart. *See Hutter Constr. Co. v. International Union of Operating Eng'rs, Local 139*, 862 F.2d 641 (7th Cir.1988); *Associated Gen. Contractors of Am. v. International Union of Operating Eng'rs, Local 701*, 529 F.2d 1395 (9th Cir.), *cert. denied*, 429 U.S. 822, 97 S.Ct. 72, 50 L.Ed.2d 84 (1976).

Although acknowledging that the question was close, the *Hutter* court rested its decision that the subcontracting grievance was nonjurisdictional in nature on two considerations. First, the aggrieved union's (the Operators) complaint against its signa-

tory contractor (Hutter) arose independently of the subcontractor's assignment of work to another union, the grievance having arisen the moment Hutter entered into an agreement with a subcontractor who had not signed or was otherwise bound by the labor agreement between Hutter and the Operators. Thus, reasoned the court, the Operators would have had a grievance against Hutter even if the subcontractor had signed the area agreement and assigned the disputed work to the Operators. Conversely, the Operators would have had no legitimate grievance had Hutter subcontracted with a signatory to the area agreement who awarded the disputed work to the competing union.

The second consideration relied upon by the court was the unfairness to the Operators if the dispute were characterized as jurisdictional, the perceived unfairness resulting from the preclusion of a backpay remedy under the area agreement in cases involving jurisdictional disputes.

Neither of these considerations is without some force, and we, like the Hutter court, acknowledge that the question is a close one. We conclude, however, that to characterize the dispute between Local 513 and Alberici as essentially a breach of contract action would overlook the nub of the dispute: the question of who should have the right to operate the compressors. Although it is true that as an academic matter the breach of contract claim arose the moment Alberici subcontracted the painting and sandblasting work to Shield, and, even more academically, that that claim would have survived (however minuscule the monetary remedy therefor) had Shield ultimately signed the agreement, a claim of that sort is ethereal when compared to the tangible nature of the underlying dispute between the Operating Engineers and the Painters. If proof were needed of this proposition, it is supplied by the fact that six other nonsignatory subcontractors have performed work on the project without objection by Local 513.

Likewise, the matter of the remedy available in a breach of contract compared to that available following a decision of the National Joint Board may not be insubstantial. Local 513 informed us at oral argument that the monetary remedy it would seek from an arbitrator would be an award of the dues that Local 513 would have been entitled to had its members been assigned the task of operating the compressors. Alberici countered this assertion by representing to us that the National Joint Board could fashion a decree, should Local 513 prevail, that could result in an equivalent monetary award to Local 513.

Because the disagreement between the parties arose as a quarrel over who had the authority to run air compressors on the jobsite, we conclude that the dispute is jurisdictional in nature. It was only upon discovery of the work being done by members of a different union that Local 513 raised the issue of Alberici's non-compliance with the sub-contracting clause in the collective bargaining agreement. We agree with Alberici that the jurisdictional dispute and the breach of the subcontracting clause are so intertwined as to be one conflict.

The Alberici–Local 513 collective bargaining agreement requires that this dispute be resolved by a Joint Board specifically designed to answer jurisdictional questions. Alberici anticipated that this type of situation would arise and provided for a mechanism that would insulate it from conflicting arbitration decisions. The parties should be held to their agreement.

The judgment of the district court is reversed, and the case is remanded to the district court with directions to refer the parties' jurisdictional dispute to the AFL–CIO National Joint Board for the Settlement of Jurisdictional Disputes.